J-S45044-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
v.   :
  :
  :
  :
JAWAUN SALMOND   :
  :
Appellant   :   No. 905 EDA 2022

Appeal from the Judgment of Sentence Entered October 26, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at CP-51-CR-0007686-2018

BEFORE: OLSON, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:       **FILED FEBRUARY 22, 2023**

Jawaun Salmond (Appellant) appeals from the judgment of sentence imposed after the trial court convicted him of one count each of attempted murder, aggravated assault, aggravated assault of an unborn child, possessing an instrument of crime, simple assault, recklessly endangering another person, and three counts of violating the Uniform Firearms Act.[1] We affirm.

The trial court detailed the underlying facts as follows:

[The Victim] … grew up in the 6600 block of Chew Avenue in Northwest Philadelphia … the same area as Appellant, had known him for many years, and had spoken with him on previous occasions. On August 12, 2018, [the Victim] was visiting her friend in the Mount Airy area. While there, [the Victim] saw Appellant during the daytime sitting with a group of other men on

---

[1] 18 Pa.C.S.A. §§ 901(a), 2702(a), 2606(a), 907(a), 2701(a), 2705, 6105(a)(1), 6106(a)(1), and 6108.

the corner of Chew Avenue and Sharpnack Street. [The Victim] testified that she did not speak with Appellant at the time and she could not recall what he was wearing.

Later that evening, [the Victim] stopped at a Chinese store to get change so she could take the bus back home. As she was exiting the store, she testified that there was a "smoker" named Cheryl standing outside, who told [the Victim] something was about to happen on Chew Avenue and that she should leave. [The Victim] stated that she was already headed toward Chew Avenue and Montana Street to catch the bus home, so she continued to her destination. Once there, she saw the bus approaching, then heard someone running. She glanced back at the person running but wasn't really paying much attention to the person until he was behind her. The person then told [the Victim,] "Bitch you said you was going to line me" and opened fire on her. [The Victim] tried to run but was only able to take two or three steps before she fell and hit her face.

[The Victim] stated that while she could not see the shooter's face because it was covered by a zipped-up hoodie revealing only his eyes, she was still able to immediately identify him because she recognized his voice. She testified that without a doubt, the person who shot her was Appellant, stating: "We sat around each other multiple times on Chew and Sharpnack where we would hang…. So, I know the young man's voice." … [The Victim] stated that she heard eight (8) gunshots and then felt a "crippling feeling." She testified that she was shot four (4) times in the back, once in the liver, once in the kidney, once in the lung, and had a hematoma in her neck.

As a result of her injuries sustained during the shooting, [the Victim] spent a couple months in the hospital and underwent sixteen (16) surgeries. She had multiple drains put in and removed due to infection. The infection flooded [the Victim's] stomach with pus, which needed to be extracted several times. At the time of trial, [the Victim] stated that she was still fighting off re-infection. [The Victim] also suffered a collapsed lung and became restricted in her movements because a bullet was lodged on top of her rib. At the time of the shooting, [the Victim] was thirteen (13) weeks pregnant. Her unborn child died as a result of the shooting. [The Victim] was unable to have an operation to remove the deceased fetus and was forced to "push it out on the toilet" in the hospital.

Trial Court Opinion, 5/17/22, at 3-5 (citations to notes of testimony omitted).

The Commonwealth charged Appellant with numerous crimes in connection with the August 12, 2018 shooting, which occurred while Appellant was on parole and wearing an ankle monitor. *See* N.T., 10/26/21, at 17.

The trial court held a non-jury trial and convicted Appellant of the aforementioned crimes on May 19, 2021. On October 26, 2021, following completion of a pre-sentence investigation report (PSI), the trial court sentenced Appellant to an aggregate standard-range sentence of 22 – 50 years in prison. At the close of sentencing, defense counsel made an oral motion to withdraw from representation, which the trial court granted. *Id.* at 21-22. Despite seeking leave to withdraw, trial counsel filed a post-sentence motion challenging the discretionary aspects of sentence, which was denied by operation of law on February 28, 2022. Appellant timely appealed and has filed a court-ordered Pa.R.A.P. 1925(b) statement.[2]

Appellant presents a single question for review:

Is the sentence imposed unduly harsh and excessive under the circumstances of this case where, *inter alia*, the [trial] court relied upon an improper factor in fashioning the sentence?

Appellant's Brief at 4.

---

[2] The trial court appointed new counsel, who was initially unaware of his appointment. As a result, Appellant filed a *pro se* Post-Conviction Relief Act (PCRA) petition. Appellant withdrew his *pro se* PCRA petition when appellate counsel entered his appearance.

Appellant asserts his sentence is harsh and excessive because the trial court failed to consider mitigating factors; improperly considered hearsay[3]; and improperly imposed consecutive sentences. *Id.* at 38-49.

Our review discloses that Appellant has not preserved his claims. There is no absolute right to challenge the discretionary aspects of a sentence on appeal. *See Commonwealth v. Hill*, 66 A.3d 359, 363 (Pa. Super. 2013). Where the appellant has preserved his sentencing challenge by raising it in a post-sentence motion, he must (1) include in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence pursuant to Pa.R.A.P. 2119(f); and (2) show there is a substantial question that the sentence is not appropriate under the Sentencing Code. *Hill*, 66 A.3d at 363-64.

Here, Appellant filed a timely post-sentence motion for reconsideration of sentence, but claimed only in general terms that "the sentence imposed was done without sufficient reasons for same being placed on the record." Post-Sentence Motion, 10/29/21, at 1 (unnumbered). An appellant waives a challenge to the discretionary aspects of sentence not raised in a post-sentence motion, and may not raise it for the first time on appeal. *See*

---

[3] Appellant complains the trial court "denied his right to the presumption of innocence" by considering "hearsay allegations which were unreliable, unsubstantiated, and disputed by [Appellant.]" Appellant's Brief at 48. The hearsay Appellant references is in the PSI, where Appellant was quoted as saying that the Victim "got what she deserved." *Id.* at 46.

***Commonwealth v. Bradley***, 237 A.3d 1131, 1138-39 (Pa. Super. 2020) (claim waived where not specifically raised in post-sentence motion); ***see also*** Pa.R.A.P. 302(a).

Appellant raised his discrete sentencing claims for the first time in his Rule 1925(b) statement. Concise Statement of Errors, 4/4/22, at 1-3 (unnumbered); ***see Commonwealth v. Coleman***, 19 A.3d 1111, 1118 (Pa. Super. 2011) (issues raised for first time in Rule 1925(b) statement are waived). Therefore, we are constrained to find waiver.

Waiver notwithstanding, we would conclude that Appellant's standard-range sentence was neither excessive nor unreasonable. ***See***, ***e.g.***, ***Commonwealth v. Moury***, 992 A.2d 162, 171 (Pa. Super. 2010) (stating that "where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code," and holding that a sentence was not unreasonable where trial court had the benefit of PSI and imposed a standard range sentence); ***Commonwealth v. Raven***, 97 A.3d 1244, 1254-55 (Pa. Super. 2014) (defendant's standard range sentences were neither unreasonable nor excessive where "record reflects that the [sentencing] court carefully considered all of the evidence presented at the sentencing hearing.").

The record demonstrates the trial court considered the PSI, Appellant's allocution, and the Victim's statement in imposing Appellant's sentence. ***See*** N.T., 10/26/21, at 16-20; Trial Court Opinion, 5/17/22, at 15-19. This is what

the law requires. ***See***, ***e.g.***, ***Commonwealth v. Hardy***, 939 A.2d 974, 980 (Pa. Super. 2007) (rejecting defendant's challenge to discretionary aspects of sentence and stating sentencing court is not required "to ignore context and instead review [the] charges in a vacuum, where only the name of the offense and corresponding standard range sentence is considered."). Moreover, a sentencing court is allowed to consider hearsay in determining a sentence; it is not an improper factor. ***Commonwealth v. Medley***, 725 A.2d 1225, 1230 (Pa. Super. 1999) ("Hearsay testimony is precisely the type of evidence which is the right of a court in sentencing to consider … pre-sentence investigations are routinely ordered and considered by the court and a pre-sentence report is the very definition of hearsay[.]"). Finally, the trial court had discretion to impose consecutive sentences. ***Commonwealth v. Radecki***, 180 A.3d 441, 470 (Pa. Super. 2018) ("Pennsylvania law affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences" (citation omitted)). Thus, even if properly preserved, Appellant's claims would not merit relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/22/2023